UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL SOLYARIK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No.: 2:23-cv-01655-JHE |
| ALLSTATE INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**[1]

On October 25, 2023, Plaintiff Daniel Solyarik ("Solyarik" or "Plaintiff"), proceeding *pro se*, filed a complaint in the Bessemer Division of the Circuit Court of Jefferson County, Alabama against Defendants Allstate Insurance Company ("Allstate") and Copart, Inc. ("Copart," and, together with Allstate, "Defendants"). (Doc. 1-1). Copart removed the case to this court and moved to dismiss the complaint. (Docs. 1 & 4). Solyarik filed an amended complaint (the operative complaint in this action), mooting the motion to dismiss. (Doc. 8).

Both Copart and Allstate have moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1), (6), and (7). (Docs. 13 & 36). Solyarik opposes both motions (docs. 22 & 38), and each Defendant has filed a reply in support of its respective motion (docs. 27 & 39). Solyarik has also moved for leave to amend his complaint a second time. (Doc. 23). Copart opposes that motion. (Docs. 33). For the reasons discussed below, Defendants' motions are

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 34).

**GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**. Solyarik's motion for leave to amend is **GRANTED IN PART** and **DENIED IN PART**.

## I. Legal Standards[2]

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Even when a party does not assert a jurisdictional challenge, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005). Simply put, a federal court is powerless to act beyond its constitutional or statutory grant of subject-matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Regardless of how the issue came before the court, a plaintiff, as the party invoking jurisdiction, bears the burden of establishing the court's subject-matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

A challenge to a court's subject-matter jurisdiction may come by way of a facial attack or a factual attack:

> Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

---

[2] Because the undersigned reaches only the parties' Rule 12(b)(1) and 12(b)(7) arguments, only the standards pertinent to those Rules are set out below.

*Garcia v. Copenhaver, Bell & Assocs., M.D.s*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citations omitted).

Because Copart and Allstate rely on matters outside the pleadings (specifically, the Copart Terms of Service, (doc. 13-1)), their challenges are factual rather than facial. Under a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) (citation omitted). Indeed, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Motta v. United States*, 717 F.3d 840, 844 (11th Cir. 2013). However, a court may only find that it lacks subject matter jurisdiction "if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citations omitted). When a jurisdictional challenge implicates the merits of the plaintiff's claim, the court must "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted). This ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original).

### B. Rule 12(b)(7)

A court considering a motion to dismiss under Rule 12(b)(7) must determine whether the plaintiff has failed to join a required party under Rule 19. FED. R. CIV. P. 12(b)(7). The Rule 19 standard is discussed further below. "When resolving a 12(b)(7) motion to dismiss, courts must

accept a complaint's allegations as true, but courts may also go beyond the pleadings and consider extrinsic evidence to determine whether an absent party is indispensable." "[A] ruling on a motion to dismiss for failure to join a necessary and indispensable party requires the Court to accept the allegations of the complaint as true, and the Court may go outside the pleadings and look at extrinsic evidence." *Sparta Ins. Co. v. Poore*, 2013 WL 6243707, at *1 (N.D. Ala. Dec. 3, 2013) (citing *Rotec Indus., Inc. v. Aecon Grp., Inc.,* 436 F.Supp.2d 931, 933 (N.D. Ill. 2006)*,* in turn citing *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479–80 nn. 2, 4 (7th Cir. 2001)).

## II. Facts

Copart (a Texas citizen) provides online vehicle auctions and remarketing services to automotive resellers. (Doc. 8 at ¶ 7). Copart allows members to bid on and purchase vehicles through a set of Terms and Conditions ("T&Cs"). (*See* doc. 13-1). Under the T&Cs, "[i]t is the sole responsibility of the Member to ascertain, confirm, research, inspect, and/or investigate vehicles and any and all Vehicle Information prior to bidding on vehicles." (*Id.* at 6). The T&Cs also provide that "all vehicles sold through Copart are sold '**AS-IS WHERE-IS,' WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY**." (*Id.*) (emphasis in original). And Copart and its sellers "expressly disclaim the accuracy or completeness of any and all information provided to Members regarding vehicles, whether provided in written, verbal, or digital image form." (*Id.*).

On October 25, 2022, Solyarik (a Pennsylvania citizen (*see* doc. 1)) noticed a Copart lot advertising a Dodge Challenger with the VIN 2C3CDZBT8JH259222 listed for sale by then-owner Allstate (a citizen of Illinois). (Doc. 8 at ¶¶ 6, 8–9). The listing contained photographs corroborating this VIN. (*Id.* at ¶ 9). The listing indicated that the Challenger had a salvage title

4

pending from the Alabama Department of Motor Vehicles, which would be provided once received from the state. (*Id.*). Through a broker, Bid N' Drive (a Georgia citizen), Solyarik ultimately placed a successful bid for the Challenger, acquiring it for $18,000.[3] (*Id.* at ¶¶ 8–9). Solyarik harbored doubts about the authenticity of the VIN due to the low sales price. (*Id.*).

When Solyarik took delivery of the Challenger, his suspicions were confirmed: the vehicle's VIN locations had been defaced or removed. (*Id.* at ¶ 10). Allstate was aware of the Challenger's VIN issues, having declared the vehicle a total loss in 2021, and was also aware of the lack of a salvage title. (*Id.* at ¶¶ 23, 29). Solyarik was unable to inspect the vehicle's VIN because it had been removed from all three physical locations on the vehicle and the T&Cs prohibit members from bringing tools of any sort, including diagnostic scan tools, onto Copart's premises when inspecting vehicles. (*Id.* at ¶ 24). Ultimately, Solyarik believed it would be worth keeping the Challenger because he could ultimately obtain a replacement VIN. (*Id.*).

Although Solyarik discovered the vehicle's likely VIN, his efforts to obtain a title proved fruitless. (*Id.* at ¶¶ 11–21). Through Bid N' Drive, Solyarik inquired about the title several times in late 2022 and early 2023. (*Id.* at ¶¶ 11, 13). On April 20, 2023, having still not received the title, Solyarik contacted Copart directly. (*Id.* at ¶ 14). Copart indicated to Solyarik that any issues or questions with his purchase must be directed to Bid N' Drive. (*Id.*). Several days later, Solyarik contacted Copart's regional manager; the regional manager indicated that Copart was still waiting for the title and that he would be in touch when he had more information. (*Id.* at ¶ 15). Solyarik never received another email from the regional manager. (*Id.*). On May 12, 2023, Bid N' Drive

---

[3] Bid N' Drive is a Copart member, having agreed to its T&Cs on October 14, 2020. (Doc. 13-1).

forwarded an email indicating that the Challenger would have to be re-VINned in order for Copart to obtain the title. (*Id.* at ¶ 17). Copart offered to purchase the vehicle back, but Solyarik refused on the basis that he had wasted six months with a vehicle he could not use. (*Id.*).

Solyarik contacted various government entities, but they were no help either. (*Id.* at ¶¶ 16, 18–20). On October 25, 2023, having still not received a title, Solyarik filed the original complaint in this case. (*Id.* at ¶ 21; doc. 1).

### III. Analysis

In his amended complaint, Solyarik raises the following claims: fraudulent suppression of the VIN, against Allstate (doc. 8 at ¶¶ 22–27; fraudulent suppression of the title, against Allstate (*id.* at ¶ 28–33); fraudulent misrepresentation of the title, against Copart (*id.* at ¶ 34–38); fraudulent misrepresentation of the VIN, against Copart (*id.* at ¶¶ 39–43); breach of warranty, against Copart and Allstate (*id.* at ¶¶ 44); wantonness, against Copart and Allstate (*id.* at ¶¶ 45); false advertising under the Lanham Act, against Copart and Allstate (*id.* at ¶¶ 46–47, 58); fraudulent deceit, against Copart (*id.* at ¶¶ 48–49); and fraudulent deceit, against Allstate (*id.* at ¶¶ 50–51).

Copart and Allstate argue Solyarik lacks standing to pursue any of these claims (doc. 13 at 5–7; doc. 36 at 6–9), that Solyarik's claims should be dismissed due to his failure to join Bid N' Drive (doc. 13 at 10–13; doc. 36 at 14–16), and that Solyarik's claims fail on the merits (doc. 13 at 8–16; doc. 36 at 9–14). Solyarik acknowledges he lacks standing to pursue his Lanham Act claim and abandons it (doc. 22 at 3), but he asserts he does have standing to pursue the rest of his claims, that the court should order Bid N' Drive joined rather than dismiss his claims, and that he has stated a claim on the merits. (*See* doc. 22; doc. 38). The undersigned reaches only the issues of standing and Bid N' Drive's joinder below.

6

**A. Standing**

Standing is a threshold issue, as Article III of the United States Constitution limits a federal court's jurisdiction to only "Cases" and "Controversies." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021). A plaintiff has Article III standing if he can establish (1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In addition to these constitutional requirements, the Supreme Court has "fashioned . . . principles of judicial restraint, which have come to be known as 'prudential' considerations" and "are intended to ensure the proper role of the courts in our tripartite system of government by avoiding judicial resolution of abstract questions that would be more appropriately addressed by other governmental institutions." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).

At issue here is the prudential standing inquiry into "whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties," *see id.* (quoting *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987)). "The prohibition against third-party standing promotes the fundamental purpose of the standing requirement by ensuring that the courts hear only concrete disputes between interested litigants who will frame the issues properly." *Harris*, 20 F.3d at 1121 (citing *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220–21 (1974)). The Supreme Court has recognized an exception to the prohibition when the plaintiff can show (1) "that he has suffered an actual or threatened injury," (2) that there is "a substantial relationship between the litigant and the third party," and (3) that there is "some hindrance to the third party's ability to protect his or her own interests." *Id.* at 1122 (quoting *Powers v. Ohio*, 499 U.S. 400, 409–12 (1991)).

**1. First-Party Standing**

To show Solyarik lacks standing, Copart points to the amended complaint's assertion that Solyarik was required to use a broker to access its platform. (Doc. 13 at 6) (citing doc. 8 at ¶ 8). Allstate echoes this. (Doc. 36 at 6–9). In response to Allstate's motion, Solyarik argues that he is a Copart member, and therefore that he is asserting his own claims and not Bid N' Drive's, so the inquiry into third-party standing is misdirected. (Doc. ). In response, Allstate notes that Copart's T&Cs state that a Copart member signing with a registered broker to bid on a vehicle acknowledges that he is "buying the vehicle from the Broker, not from Copart." (Doc. 13-1 at 5).

As to Solyarik's breach of warranty claim, which is based in contract, Defendants have the better argument. In general, contractual claims under Alabama law may only be asserted by parties to the contract. *See Bernals, Inc. v. Kessler-Greystone, LLC*, 70 So. 3d 315, 319 (Ala. 2011) ("[O]ne not a party to, or in privity with a contract, cannot sue for its breach."); *Kidd v. Kilpatrick Chevrolet, Inc.,* 613 So.2d 336, 338 (Ala. 1993) ( "Alabama has abolished privity requirements in actions involving personal injuries, but [for] actions where the claim alleges purely economic injury . . . privity is still required."). Although Solyarik acted through Bid N' Drive in acquiring the Challenger, the nature of the Copart platform and its T&Cs mean that Solyarik was not technically a party to any contract for the Challenger's sale. Regardless of whether Solyarik was injured, claims related to that contract (such as Solyarik's breach of warranty claim) are Bid N' Drive's to assert—not Solyarik's. *See United States Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (noting that a litigant must invoke his own rights "even when the very same allegedly illegal act that affects the litigant also affects a third party"). Since Solyarik attempts to assert Bid N' Drive's contractual breach of warranty claim, he must establish that he has standing to do so as a third party.

That said, Solyarik has established standing to assert the remainder of his claims against Allstate and Copart—or at least that his standing is intertwined with the merits of those claims such that the court should find jurisdiction exists, *Morrison*, 323 F.3d at 925. For the claims sounding in fraud, Solyarik contends his status as a Copart member entitled to purchase vehicles from Copart—whether on his own or through a broker—puts him squarely within the class of persons to whom Copart made fraudulent representations and from whom Allstate fraudulently suppressed facts. (Doc. 38 at 2–3). Solyarik also contends he was injured by these statements because they induced him to purchase the Challenger. (*Id.*). At a minimum, this implicates the merits of Solyarik's fraud claims.[4] As for the wantonness claim, Alabama law defines "wantonness" as "'the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citation omitted). Whether Solyarik has standing to assert this claim depends on whether Allstate or Copart owed him—a third party to the contract—a duty. That is also a merits question. Neither Defendant addresses these claims specifically, and thus neither offers any convincing argument why Solyarik lacks Article III standing to assert a fraud or wantonness claim under those circumstances.

---

[4] Under Alabama law, the elements of fraud are: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003) (citation omitted). The elements of fraudulent suppression are "(1) the defendant had a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result." *Larsen v. WF Master REO, LLC*, 360 So. 3d 357, 372 (Ala. Civ. App. 2022) (citing *Freightliner, LLC v. Whatley Contract Carriers, LLC*, 932 So. 2d 883, 891 (Ala. 2005)).

Accordingly, the undersigned finds Solyarik has demonstrated first-party standing to assert fraud and wantonness claims.

**2. Third-Party Standing to Assert Contractual Claims**

The first two elements of third-party standing are satisfied as to Solyarik's breach of warranty claim. Solyarik can show (and neither Copart nor Allstate appears to dispute) that he has suffered an injury because he has been unable to title the Challenger. As to the second element, Solyarik contends the principal-agent relationship that exists between Solyarik as the purchaser and Bid N' Drive as the broker is a sufficiently close relationship to confer standing. (Doc. 22 at 3). Here, the court's focus is whether "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Harris*, 20 F.3d at 1123 (quoting *Singleton v. Wulff,* 428 U.S. 106, 112 (1976) (plurality opinion)). To the extent that Bid N' Drive might have the type of breach of warranty claim Solyarik asserts against Copart and Allstate, Solyarik is just as effective a proponent of it as Bid N' Drive, regardless of whether Solyarik is downstream of that claim.[5]

---

[5] Allstate cites *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1285 (N.D. Fla. 2022), for the proposition that "[t]he principal-agent relationship, standing alone, is plainly insufficient to permit third-party standing." (Doc. 39 at 4). That case does not resemble this one at all. The portion of *Falls* Allstate cites involves a consulting firm purporting to assert standing on behalf of "potential future clients." 609 F. Supp. 3d at 1285. The court held this relationship was not close enough to satisfy the second third-party standing element. In support, it cited *Kowalski v. Tesmer*, 543 U.S. 125 (2004), a case in which the Supreme Court held that "attorneys do not have a 'close relationship' with potential clients." 609 F. Supp. 3d at 1285. Here, by contrast, there is no tenuous "potential" relationship like those in both *Falls* and *Kowalski*; Solyarik unquestionably retained Bid N' Drive as his broker.

The third element is on much shakier footing. Solyarik points to the Release of Liability and Indemnification clause contained in paragraph IV.I of the T&Cs to demonstrate that Bid N' Drive cannot vindicate its own interests. (Doc. 22 at 3). In relevant part, that clause states:

> Members agree to indemnify, defend, and hold Copart Indemnitees harmless from any and all damages, losses, liabilities, costs or expenses (including attorneys' fees) arising from claims made by the Member and the Member's visitors arising from or related to . . . claims made against Copart Indemnitees by the Member's visitors, agents, employees, or customers.

(Doc. 13-1 at 9). Solyarik misapprehends the nature of this paragraph. The clause does not bar Bid N' Drive from bringing *its own* claims against Copart, which is the impediment Solyarik must identify to support the third element of third-party standing. Instead, the clause requires Bid N' Drive to indemnify Copart against *third-party claims* against Copart made by Bid N' Drive's "visitors, agents, employees, or customers."[6] And while Solyarik raises the clause in opposition to Allstate's motion as well (*see* doc. 38 at 3), the clause says nothing about claims Bid N' Drive might have against Allstate. Nothing in the language Solyarik cites appears to prohibit Bid N' Drive from bringing first-party breach of warranty claims against Copart or Allstate, should it choose to do so. Accordingly, since the burden is on Solyarik to show standing, his breach of warranty claim is due to be dismissed for lack of standing.

---

[6] This action is precisely the type of action at which the clause appears directed. Indeed, Solyarik contends that Bid N' Drive is also hindered from asserting its own claims because "Copart suspended their account until this case is resolved satisfactorily in Copart's favor because Bid N Drive did not defend Copart and Allstate, and this hinders Bid N Drive because restoring their entire business as a Copart registered broker hinges on staying out of this case." (Doc. 38 at 3). In any event, Solyarik's argument is that Bid N' Drive chooses not to assert its claims, not that it cannot do so.

**B. Failure to Join an Indispensable Party**

Both Copart and Allstate also argue the complaint (or what remains of it) should be dismissed because Solyarik has failed to join Bid N' Drive, whom they argue is a necessary and indispensable party under Rule 19.[7] (Doc. 13 at 10–13; doc. 36 at 14–16).

The Eleventh Circuit has set out "a two-part test for determining whether a party is indispensable." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003) (citation omitted). "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible," *id.* at 1980 (citation omitted), what is sometimes referred to as a "necessary" party. Second, "[i]f the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Id.* at 1980 (citation omitted). If the absent party is thus determined to be "indispensable," the case should be dismissed. *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999) (citing FED. R. CIV. P. 19(b)).

**1. Necessity of Joining Bid N' Drive**

Under Rule 19(a)(1):

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

---

[7] "The amendments to Rule 19 in 2007 replaced the term 'necessary' in Rule 19(a) with the term 'required' and eliminated the term 'indispensable' from Rule 19(b). FED. R. CIV. P. 19, advisory committee's note. Nevertheless, many courts continue to use the terms 'necessary' and 'indispensable' when applying Rule 19." *Weeks v. Hous. Auth. of City of Opp, Ala.*, 292 F.R.D. 689, 692 (M.D. Ala. 2013)

12

>  (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). In determining whether a party is necessary, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,* 669 F.2d 667, 669 (11th Cir. 1982) (cleaned up).

Here, Copart and Allstate assert Bid N' Drive has an interest in the outcome of this action that it cannot adequately protect. (Doc. 13 at 11; doc. 36 at 15). Specifically, they argue that Bid N' Drive might find itself subject to liability for its role in the sale of the vehicle. (*Id.*). Solyarik does not really dispute this, instead focusing his arguments on his own standing and what should be done if the court determines Bid N' Drive is a necessary party. (Doc. 22 at 5; doc. 38 at 7). At a minimum, the T&Cs discussed above potentially require Bid N' Drive to indemnify Copart for Solyarik's claims, if successful. Resolving Solyarik's claims in Bid N' Drive's absence appears to impair Bid N' Drive's ability to protect its interest in not being liable for such an indemnity claim. Additionally, even though the interests of Bid N' Drive, Copart, and Allstate all appear to align (albeit for different reasons) in ensuring that Solyarik's claims are unsuccessful, "[c]ourts have recognized that 'a contracting party is the paradigm of an indispensable party.'" *HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.*, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010) (quoting *Caribbean Telcoms., Ltd. v. Guy. Tel. & Tel. Co.,* 594 F.Supp.2d 522, 532 (D.N.J. 2009)). Bid N' Drive's status as a contracting party to two of the transactions that ultimately resulted in Solyarik's possession of the Challenger—and as the only one of the four parties involved in those transactions

13

who is not currently a party to this lawsuit—places it in a somewhat unusual status. Based on the T&Cs and the nature of the transactions, and since Solyarik does not dispute the issue, the undersigned finds Bid N' Drive is a necessary party to this action.

**2. Feasibility of Joinder**

Having established that Bid N' Drive is a necessary party, the question becomes what to do with that fact. Copart and Allstate continue to the "indispensability" step discussed above, analyzing under the factors of Rule 19(b) whether the action should be dismissed because Solyarik failed to join Bid N' Drive. (Doc. 13 at 12–13; doc. 36 at 15–16). But, by its own terms, Rule 19(b) and its factors only apply "when joinder is not feasible." FED. R. CIV. P. 19(b). *See California v. Arizona,* 440 U.S. 59, 62 n. 3 (1979) ( "[W]hen a person described by Rule 19(a) *cannot be joined,* 'the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.'"); *See also Focus on the Family*, 344 F.3d at 1280 (the court proceeds to that second step only "[i]f the person should be joined *but cannot be* . . . .") (emphasis added). Solyarik argues that if Bid N' Drive can feasibly be joined, Rule 19(a)(2) applies instead. (Doc. 22 at 5; doc. 38 at 7). Under that Rule, "[i]f a person has not been joined as required, the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2). Neither Copart nor Allstate address in their reply briefs whether Rule 19(a)(2) applies; Copart does not revisit the Rule 12(b)(7) argument at all (*see generally* doc. 27), and Allstate simply restates its argument that dismissal is the appropriate remedy (*see* doc. 39 at 8).

Solyarik is correct. If it is possible for Bid N' Drive to be joined as a party, the remedy is compelled joinder rather than dismissal. *See Focus on the Family*, 344 F.3d at 1280 ("Because it appears that Eller readily can be made a party to this action, the standard for dismissal under Rule

14

19(b) is unmet."); *Rook v. First Liberty Ins. Corp.*, 591 F. Supp. 3d 1178, 1180 (N.D. Fla. 2022) (citing *Focus on the Family*, 344 F.3d at 1280) ("[A] complaint can only be dismissed for failure to join an indispensable party if the party cannot be joined."); *Davis v. Raymond,* 2013 WL 2047424, at *4 (S.D. Fla. 2013) (holding that a defendant may at most request that a Court order plaintiff to join an indispensable party under Rule 19(a)(2) where joinder of party is presumably feasible). To that end, it appears feasible for Bid N' Drive to be joined as a party. First, there is no jurisdictional barrier to joining Bid N' Drive. Based on the citizenship allegations in Solyarik's amended complaint, Copart acknowledges that "[j]oining Bid N' Drive would not destroy diversity of citizenship because Bid N' Drive is a citizen of Georgia where it is incorporated and maintains its principal place of business." (Doc. 13 at 11 n.6) (citing doc. 8 at ¶ 8). *See Focus on the Family*, 344 F.3d at 1280 (noting that destruction of diversity is a feasibility consideration). Second, there is no indication that Bid N' Drive is not subject to service of process. Therefore, the undersigned will order under Rule 19(a)(2) that Bid N' Drive be made a party to this action.[8]

Given Bid N' Drive's status as a necessary party to this action, it is premature to adjudicate claims that might bear on its future liability. Therefore, Defendants' motions to dismiss will be denied without prejudice to their ability to file them once Bid N' Drive is joined as a party. Solyarik's motion for leave to amend will be granted to the extent that he must file an amended complaint including Bid N' Drive as a necessary party under Rule 19(a).[9]

---

[8] The undersigned acknowledges that joinder of Bid N' Drive may implicate magistrate judge jurisdiction under 28 U.S.C. § 636. Bid N' Drive will need to make a consent election as to magistrate judge jurisdiction once it appears.

[9] Although both parties acknowledge that Bid N' Drive could be made a party to this action, the question of *how* it should be made a party is unclear. Solyarik may add Bid N' Drive in whatever capacity (i.e., plaintiff or defendant) he chooses. A party who disagrees with Solyarik's

15

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss (docs. 13 & 36) are **GRANTED** to the extent that Solyarik's breach of warranty claim and Lanham Act claim are **DISMISSED WITHOUT PREJUDICE** due to Solyarik's lack of standing to assert them.  The motions are **DENIED** to the extent that they challenge Solyarik's standing to assert his other claims.  They are **DENIED WITHOUT PREJUDICE** in all other respects, and Defendants may reassert their arguments for dismissal once Bid N' Drive appears.

Solyarik's motion to amend (doc. 23) is **GRANTED** to the extent that he must file an amended complaint by **September 3, 2024**.  Solyarik's amended complaint must include Bid N' Drive as a party.  To the extent that Solyarik seeks to reform his wantonness claim consistent with his proposed amended complaint (*see* doc. 23), he may do so in his amended complaint.

DONE this 20th day of August, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

designation may move to realign Bid N' Drive once Bid N' Drive appears.  *See City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).