FILED

2025 Sep-24  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL SOLYARIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:23-cv-01655-JHE |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On October 25, 2023, Plaintiff Daniel Solyarik ("Solyarik" or "Plaintiff"), proceeding *pro se*, filed a complaint in the Bessemer Division of the Circuit Court of Jefferson County, Alabama against Defendants Allstate Insurance Company ("Allstate") and Copart, Inc. ("Copart," and, together with Allstate, "Defendants").  (Doc. 1-1).  Copart removed the case to this court.  (Docs. 1).  After motion practice concerning Solyarik's initial complaint and subsequent amendments, the operative complaint in this case is Solyarik's third amended complaint (doc. 61).  Defendants have moved to dismiss that complaint.[2]  (Doc. 64).  Solyarik opposes the motion (doc. 68), and Defendants have filed a reply in support (doc. 73).  As discussed further below, Defendants' motion is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Docs. 34 & 69).

[2] Solyarik's third amended complaint also contained claims against Defendant Bid N' Drive, but those claims were previously dismissed.  (Doc. 76).  Copart has also asserts third party claims against Bid N' Drive (doc. 44), but its third party complaint is not at issue here.

## I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts,

when they occurred, and who engaged in them." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

The court accepts all factual allegations in the complaint as true on a motion to dismiss under Rule 12(b)(6). *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Facts

Solyarik is a member of Copart, an online vehicle auction service. (Doc. 61 at ¶¶ 7, 26, 46). As a Copart member, Solyarik is subject Copart's terms and conditions ("T&Cs"), which govern how members bid on and purchase vehicles. (*See* doc. 64-a ).[3] Through the T&Cs, Copart and its sellers "expressly disclaim the accuracy or completeness of any and all information provided to Members regarding vehicles, whether provided in written, verbal, or digital image form ('Vehicle Information')." (*Id.* at 6). "Vehicle Information" under the T&Cs includes, but is not limited to, "year, make, model, condition, ACV, damage amount, damage type, drivability, accessories, equipment, mileage, odometer disclosures, vehicle identification number (e.g. 'VIN,'

---

[3] When considering a motion to dismiss, a court may consider documents not referred to or attached to a complaint if the document is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The terms of Solyarik's relationship with Copart as a member are central to Solyarik's claims. (*See* doc. 61 at ¶¶ 7, 26, 46). The authenticity of the terms and conditions is not in question, and Solyarik has acknowledged that he agreed to the T&Cs. (Doc. 68 at ¶ 6). Much of Solyarik's response to the defendants' motion is spent discussing the T&Cs. (*See generally* doc. 68).

'HIN,' and serial number), title, repair cost, repair history, title history, and total loss history."
(*Id.*).   Under the T&Cs, "[i]t is the sole responsibility of the Member to ascertain, confirm, research, inspect, and/or investigate vehicles and any and all Vehicle Information prior to bidding on vehicles."  (*Id.*).   The T&Cs also provide that "all vehicles sold through Copart are sold '**AS-IS WHERE-IS,' WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY**."  (*Id.*) (emphasis in original).

On October 25, 2022, Solyarik noticed a Copart lot advertising a Dodge Challenger with the Vehicle Identification Number ("VIN") 2C3CDZBT8JH259222 listed for sale by then-owner Allstate.  (*Id.* at ¶ 9).  The listing contained photographs corroborating this VIN.  (*Id.* at ¶ 9).  The listing indicated that the Challenger had a salvage title "pending" from the Alabama Department of Motor Vehicles, which would be provided once received from the State.  (*Id.*).  Through a broker, Bid N' Drive, Solyarik ultimately placed a successful bid for the Challenger, acquiring it for $18,000.  (*Id.* at ¶¶ 8–9).  Solyarik harbored doubts about the authenticity of the VIN due to the low sales price.  (*Id.*).

When Solyarik took delivery of the Challenger, he noticed that the vehicle's VIN had been defaced or removed from all three physical locations on which it would normally appear on the vehicle. (*Id.* at ¶ 10).  Allstate was aware of the Challenger's VIN issues, having declared the vehicle a total loss in 2021, and was also aware of the lack of a salvage title.  (*Id.* at ¶¶ 25, 29).  Solyarik contends he was unable to discover the vehicle's true VIN because of the absence of a legible VIN on the Challenger itself and because the T&Cs prohibit members from bringing tools of any sort, including diagnostic scan tools, onto Copart's premises when inspecting vehicles.  (*Id.* at ¶ 26).

Although Solyarik eventually discovered the vehicle's likely VIN, his efforts to obtain a title proved fruitless. (*Id.* at ¶¶ 11–21). Through Bid N' Drive, Solyarik inquired about the title several times in late 2022 and early 2023. (*Id.* at ¶¶ 11, 13). On April 20, 2023, having still not received the title, Solyarik contacted Copart directly. (*Id.* at ¶ 14). Copart indicated to Solyarik that any issues or questions with his purchase must be directed to Bid N' Drive. (*Id.*). Several days later, Solyarik contacted Copart's regional manager; the regional manager indicated by email that Copart was still waiting for the title and that he would be in touch when he had more information. (*Id.* at ¶ 15). Solyarik never received another email from the regional manager. (*Id.*). On May 12, 2023, Bid N' Drive forwarded an email indicating that the Challenger would have to be re-VIN-ed for Copart to obtain the title. (*Id.* at ¶ 17). Copart offered to purchase the vehicle back, but Solyarik refused on the basis that he had wasted six months with a vehicle he could not use. (*Id.*).

Solyarik's outreach to various government entities proved futile. (*Id.* at ¶¶ 16, 18–20). On October 25, 2023, having still not received a title, Solyarik filed the original complaint in this case. (*Id.* at ¶ 21). Solyarik had still not received a title when he filed his third amended complaint. (*Id.*).

### III. Analysis

Solyarik raises the following claims against Defendants: fraudulent suppression of the VIN, against Allstate (doc. 61 at ¶¶ 24–29); fraudulent suppression of the title, against Allstate (*id.* at ¶ 30–35); fraudulent misrepresentation of the title, against Copart (*id.* at ¶ 36–40); fraudulent misrepresentation of the VIN, against Copart (*id.* at ¶¶ 41–45); wantonness, against Copart and Allstate (*id.* at ¶¶ 45); fraudulent deceit, against Copart (*id.* at ¶¶ 47–48); and fraudulent deceit, against Allstate (*id.* at ¶¶ 49–50).

Defendants rely in large parts on aspects of the T&Cs to show that Solyarik's claims are due to be dismissed.  (*See* doc. 64 at 5–7).  Specifically, they rely on the provisions highlighted above: (1) that buyers have the "sole responsibility . . . to ascertain, confirm, research, inspect, and/or investigate vehicles and any and all vehicle information prior to bidding on vehicles" (*id.* at 5) (citing doc. 64-1 at 5); (2) that Copart expressly disclaims the "accuracy or completeness of any and all information" regarding the vehicle, including its VIN and title information (*id.*) (citing doc. 64-1 at 5); and that Copart expressly disclaims all warranties and provides that vehicles sold through Copart are sold as-is (*id.* at 6) (citing doc. 64-1 at 5).  Solyarik counters that the T&Cs are void as contrary to public policy under both Alabama law and federal law and should be disregarded.  (*See* doc. 68 at 3, 6–8).  Because the applicability of the T&Cs affects the merits of all of Solyarik's claims, it is discussed first.

In general, Alabama law venerates the freedom to contract and requires courts to enforce contracts as written. *See Shoney's LLC v. MAC East, LLC*, 27 So. 3d 1216, 1221 ("[ the Alabama Supreme Court] has consistently held that the freedom to contract is an inviolate liberty interest"); *Mullervy v. Cash Holdings, Inc.*, 2024 WL 1142259 at *8 (N.D. Ala. March 15, 2024) ("A court must enforce an unambiguous contract as written, even if the result seems harsh.").  The power to void a contract on the basis that it violates public policy is a "delicate and undefined power . . . [which] should be exercised only in cases free from doubt." *Poole v. Prince* 61 So. 3d 258, 281 (Ala. 2010) (quoting *Milton Constr, Co. V. State Highway Dep't*, 568 So. 2d 784, 788 (Ala. 1990)).  "The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain . . . [T]he courts will not declare an agreement void on the ground of public policy unless it clearly appears to be in violation of the public policy of the *state*.'" *Id.* (emphasis added).  *See also Colston v. Gulf States Paper Corp.,* 282 So. 2d 251,

6

255 (1973) ("The true test to determine whether a contract is unenforceable because of public policy is whether the public interest is injuriously affected in such a substantial manner that private rights and interests should yield to those of the public.") (cleaned up).

Other than an argument that Defendants cannot disclaim the accuracy of the VIN (discussed further below), Solyarik does not specifically argue that any of the provisions Defendants cite are invalid.  Instead, the only specific provisions Solyarik challenges are (1) a section of the T&Cs stating that "Copart reserves the right not to release any vehicle or vehicle title for any reason" (doc. 68 at 6) (citing doc. 64-1 at 7); and (2) a provision that notes that "Certain jurisdictions permit vehicles to be sold with missing VIN plates; as a result, Copart does not guarantee that vehicles are equipped with any or all VIN plates" (doc. 68 at 6) (citing doc. 64-1 at 6).  Defendants do not rely on either provision for any of their arguments, so Solyarik's arguments regarding them are beside the point.[4]

Solyarik points to no relevant case law that suggests that any of the provisions Copart cites are unenforceable or clearly illegal.  Instead, Solyarik highlights a litany of state and federal laws that do nothing to show that the T&Cs are "clear[ly] and certain[ly]" illegal.  For example, Solyarik cites Ala. Code §§ 32-8-87(i) and 32-8-11 for the proposition that Copart had a duty to verify VIN plates and prohibited the sale without a salvage title.  (Doc. 68 at 4, 6, 7).  Section 32-8-87(i) makes it a misdemeanor for an  "owner of a salvage or junk motor vehicle who sells or transfers the vehicle to any person" to willfully fail to "provide at the time of the sale or transfer a properly

_____

[4] Even if Defendants did rely on them, Defendants also point out that a court applying Alabama law can excise an illegal provision without voiding the entire contract—even in the absence of a severability clause.  (Doc. 73 at 6) (citing *Sloan S. Homes, LLC v. McQueen*, 955 So. 2d 401, 404 (Ala. 2006)).

executed assignment and warranty of title to the transferee in the space provided therefor on the salvage certificate of title or junk certificate of title or as the department prescribes." ALA. CODE § 32–8–87(i).  Section 32-8-11 establishes accomplice liability for criminal violations of Title 32, Chapter 8.  ALA. CODE § 32–8–11.  Neither establishes that a seller of a vehicle may not disclaim the accuracy of an auction listing, nor that the T&Cs themselves clearly violate Alabama's public policy.[5]  Solyarik also cites 49 U.S.C § 33110(b)(1) for the proposition that Allstate was obligated to verify legal title.  Again, though, this is a question of Allstate's obligations under federal law following the sale, not whether the T&Cs violate Alabama law.[6]  Solyarik's reliance on other criminal statutes fares no better.

With Solyarik's public policy argument out of the way, the undersigned proceeds to the merits of Solyarik's claims.  Because Solyarik's fraudulent deceit claims are duplicative of his fraudulent suppression claim against Allstate and his fraudulent misrepresentation claim against Copart, they are not discussed separately; the analysis below applies equally to them.[7]

---

[5] To the extent that a sale pursuant to the T&Cs might run afoul of either section, the enforcement of this law is reserved for the Department of Revenue.  ALA. CODE §§ 32-8-2(3), 32-8-10.  Solyarik has no private right to enforce either section; a private citizen "lacks a judicially cognizable interest in the prosecution or no prosecution of another." *Ruhl v. Spear*, No. 5:15-CV-00742-AKK, 2015 WL 5117017, at *4 (N.D. Ala. August 28, 2015), *aff'd*, 639 F. App'x 624 (11thCir. 2016) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

[6] Much like the Alabama code sections Solyarik cites, there is no private right of action under § 33110(b)(1).  Instead, enforcement is reserved for the Attorney General.  49 U.S.C. § 33110(c).

[7] Alabama law contains a statutory provision providing a cause of action for fraudulent deceit: Ala. Code § 6-5-104, which provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers."  ALA. CODE § 6-5-104(a).  But "the elements among the various types of fraud [under Alabama law] are the same" except for a heightened scienter requirement (willfulness) for § 6-5-104 deceit.  *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1245 (N.D. Ala. 2019).  The undersigned notes that Solyarik does not explicitly invoke this statute

### A. Fraudulent Suppression Claims (Allstate)

Under Alabama law, suppression of a material fact which the party is under an obligation to communicate constitutes fraudulent suppression. *Vision Bank v. 145, LLC*, 2011 WL 5289070 at *11 (S.D. Ala. November 4, 2011). To establish fraudulent suppression, a plaintiff must show (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. *Ex parte Hugine*, 256 So. 3d 30, 58 (Ala. 2017) (citation omitted).

Solyarik contends that Allstate had a duty to disclose the VIN and title information of the vehicle, as Allstate had knowledge of the issues with the VIN and title information. (Doc. 61 ¶¶

_____

in his third amended complaint; instead, he cites *United States v. Cusino*, 694 F.2d 185 (9th Cir. 1982), an out-of-circuit criminal case. The undersigned assumes Solyarik intends to invoke the Alabama statute and includes *Cusino* for illustration.

In any case, the allegations in Solyarik's fraudulent deceit count mirror those in his other fraud counts. Subsection (b) lists four circumstances that constitute deceit: (1) "[t]he suggestion as a fact of that which is not true by one who does not believe it to be true"; (2) "[t]he assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true"; (3) "[t]he suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact"; and (4) "[a] promise made without any intention of performing it." ALA. CODE § 6-5-104(b)(1)-(4). Solyarik alleges Allstate deceived him by "willfully suppressing the nonexistence and unavailability of the vehicle's salvage title from the vehicle description on Copart's website listing for the vehicle" (doc. 61 at ¶ 49) and "willfully suppressing the VIN from the vehicle description on Copart's website listing for the vehicle" (*id.* at ¶ 50), both of which fall under subsection (b)(3) and both of which duplicate the allegations in his fraudulent suppression count. (*Compare* doc. 61 at ¶¶ 24, 27–28, 30, 33–34, *with* doc. 61 at ¶¶ 49–50). Solyarik alleges Copart deceived him because it "willfully represented the VIN" as the incorrect VIN and "willfully represented title existence" despite knowing these were false (*id.* at ¶¶ 47–48), both of which appear to fall under subsection (b)(1) and both of which duplicate the allegations in his fraudulent misrepresentation count. (*Compare* doc. 61 at ¶¶ 36–37, 41–42 *with* doc. 61 at ¶¶ 47–48).

27, 31).  Whether or not Allstate had such a duty,[8] Solyarik cannot establish the fourth element of a fraudulent suppression claim.  "Although the term 'inducement' has often been used in the description of the fourth element of suppression, it is clear that a plaintiff's 'reasonable reliance' is an essential element of a suppression claim."  (*Id.*) (cleaned up).  Even assuming that Allstate knew the true status of the VIN and title information and that Allstate was responsible for the absence of that information in the listing on Copart's website, Solyarik cannot overcome the fact that the T&Cs explicitly disclaim the accuracy of the VIN and title information.  Per the T&Cs, the information in the listing is "for convenience only" and not to be relied on by bidders.  (Doc. 64-1 at 6).  Thus, any reliance by Solyarik on the description was inherently unreasonable.

Additionally, the T&Cs place the responsibility for determining information about the vehicle squarely on the buyer.  In his response to the defendants' motion, Solyarik asserts that it was impossible for him to verify the VIN or title information because (1) Copart's T&Cs

---

[8] "A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case." *Ex parte Farmers Exch. Bank*, 783 So. 2d 24, 27 (Ala. 2000). When looking to the "circumstances of the case" to determine whether there is a duty, courts should look to "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain that fact; (5) the customs of the trade; and (6) other relevant circumstances." *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 842–43 (Ala. 1998). Where there is no duty to disclose due to the lack of a confidential relationship, the defendant "may nevertheless be liable for fraudulent concealment if he knowingly takes action to conceal a material fact that has been requested of him by the plaintiff and does so with the intent to deceive or mislead the plaintiff." *Ex parte Farmers Exch. Bank*, 783 So. 2d 24, 28 (Ala. 2000). "[T]he existence of a duty is a question of law." *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998).
Solyarik's third amended complaint does not support that he had a confidential relationship with Allstate, so he would necessarily have to rely on the circumstances to create in Allstate a duty to disclose.  There is also nothing in the complaint that would suggest that Solyarik requested either the correct VIN or title information from Allstate and that it knowingly reported false information to him with the intent to deceive him.  As to whether the circumstances of the case otherwise support a duty, it is unnecessary to go further down this path because Allstate does not argue that it did not have a duty to disclose.

prohibited him from bringing a diagnostic scan tool into its facilities to inspect the VIN and (2) the title was not available for inspection because it was not in Copart's possession. (Doc. 68 at 3). Leaving aside that this does not make it reasonable for Solyarik to rely on information Copart specifically advised him was not to be relied on, there are no facts in the third amended complaint that support (for example) that Solyarik attempted to physically inspect the Challenger at Copart's premises[9] or inquired about the title's status from Copart or Allstate. Either of these would have been a reasonable step Solyarik could have taken consistent with the T&Cs. But there is no factual allegation in the third amended complaint to support that Solyarik did anything beyond relying on the inherently unreliable information on the auction listing. This, too, renders Solyarik's reliance unreasonable.

Alabama law supports the conclusion that it was unreasonable for Solyarik to base his reliance on information explicitly described as illustrative and non-reliable. In *Pell City Wood, Inc. v. Forke Bros. Auctioneers*, 474 So. 2d 694 (Ala. 1985), the plaintiffs purchased a truck at auction. Prior to bidding, the plaintiffs received a brochure; the first three pages disclaimed warranties, with the remainder describing the property to be auctioned. *Id.* at 695. The cover of the brochure stated: "Condition of equipment in this catalog is merely a guide and is in no way a warranty or guarantee, actual or implied. All equipment is sold 'As is, where is.'" *Id.* Page two of the brochure contained a disclaimer notice:

---

[9] It is not clear from Solyarik's third amended complaint when the VIN was removed from the three physical locations on the Challenger, but a physical inspection would have shown either (1) that the VIN corresponded to the listing on the website (which would have potentially made it reasonable for Solyarik to rely on the provided VIN) or (2) that the VIN was missing or different from the listing (which would have presumably impacted Solyarik's decision to bid on the Challenger in the first place).

> NOTICE: The above categories of condition are believed to describe the equipment and have been conscientiously set forth by the owner. The equipment is available for public inspection and the foregoing is merely a guide. The condition as set forth on each piece is in no way a warranty or guarantee, actual or implied.

*Id.* And page three of the brochure stated: "All of the equipment in this Auction is being sold 'As is, Where-Is.' Conditions in this catalog are to be used as a *guide only,* and are not a warranty or guarantee." *Id*. (emphasis in original).  One of the plaintiffs acknowledged that he had read the entire brochure, including the disclaimers, prior to bidding on the truck at issue.  *Id*.  The plaintiff also declined to do any investigation, instead relying solely on the "representations" concerning the truck in the brochure.  *Id*.  After the truck broke down seven miles down the road due to a crack in the engine block, the plaintiffs sued the auction house and the seller for breach of warranty, recission, and fraud.  *Id*.  Affirming the trial court's grant of summary judgment to the defendants, the Alabama Supreme Court stated:

> [The plaintiff] read the entire brochure before bidding on any equipment. Despite all the warnings printed in the brochure, he decided to bid on, and ultimately purchased, the truck which later broke down. We fail to see how the defendants could have done any more to warn potential buyers than was done in this case. [The plaintiff] was fully aware of what might happen, and he cannot be allowed to recover for what has turned out to be a bad deal.

*Id.* at 696.  Similarly, Solyarik was on notice through the T&Cs that the information in the listing might not correspond to what he would receive.

Solyarik argues that his reliance was reasonable notwithstanding the T&Cs because the information provided by Allstate and Copart created a nondisclaimable express warranty as to the VIN and title information.[10]  (Doc. 68 at 4).  To support this, he points to a Georgia case, *Bill*

---

[10] As Solyarik acknowledges (doc. 68 at 4), the undersigned previously rejected Solyarik's direct breach of warranty claim for lack of standing.  (*See* doc. 40 at 8, 10–11).

*Spreen Toyota, Inc. v. Jenquin*, 294 S.E.2d 533 (1982), as authority for the proposition that a statement concerning a VIN creates such a warranty. (Doc. 68 at 5). As Solyarik notes, the Alabama Court of Civil Appeals cited *Bill Spreen Toyota* with approval in holding that the "core description" of an object for sale—in that case, purported Tiffany lamps that turned to be reproductions—is nondisclaimable. (*Id.* at 4–5) (citing *La Trace v. Webster*, 17 So. 3d 1210, 1218–19 (Ala. Civ. App. 2009)). But *La Trace* actually undermines Solyarik's position. In that case, the plaintiffs bought the lamps at auction. *Id.* at 1213. Prior to bidding, the plaintiffs signed a "Conditions of Auction" document stating (among other things) that "[a]ll property is sold AS IS, WHERE IS, and we make NO guarantees, warranties or representations, expressed or implied, with respect to the merchandise," including but not limited to "the correctness of the catalog, authenticity of merchandise as to age, quality, description, rarity, size, importance, provenance, physical description, historical relevance, condition, or authorship of any property." *Id.* The Conditions of Auction also put the burden on prospective bidders to "inspect the property before bidding to determine the condition, size, age, provenance, artist, and whether or not merchandise has been repaired or restored." *Id.* During the auction itself, though, "the auctioneer identified the items as 'Tiffany' items." *Id.* at 1214. Distinguishing *Pell City Wood*, *supra*, the Court of Civil Appeals observed that "the alleged representations that the lamps were 'Tiffany' products took place *during the auction* and *were not accompanied by any qualifying statements indicating that the authenticity of the lamps was in doubt.*" 17 So. 3d at 1218 (first emphasis in original, second emphasis added). It further noted that the Conditions of Auction disclaimers "may have been effective, pursuant to *Pell City Wood,* to prevent the formation of any express warranties that might otherwise have arisen *in those documents,* nothing in the language or holding of *Pell City Wood* indicates that a disclaimer in a document is effective to prevent a seller from making express

warranties in the future." *Id.* (emphasis in original).  There is no indication in the third amended complaint that either Copart or Allstate made any subsequent statements to Solyarik beyond what was set out on the auction website that might be construed as an express warranty, so *La Trace* (and, by extension, its citation to *Bill Spreen Toyota*)[11] are inapposite.

Since Solyarik could not have reasonably relied on the information on Copart's website, his fraudulent suppression claims against Allstate necessarily fail.

### B. Fraudulent Misrepresentation Claims (Copart)

Under Alabama law, the elements of fraud are: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003) (citation omitted).   "[E]ssential" to any claim of fraud is the plaintiff's reliance on the alleged misrepresentation.  *Id.*

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interest. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.

*Bedwell Lumber Co. v. T & T Corporation*, 386 So.2d 413, 415 (Ala. 1980).

Solyarik asserts two theories of fraudulent misrepresentation.   First, he contends that Copart promised that the title in question would be provided as it was "salvage and pending," although no title was ever created. (Doc. 61 ¶ 36).  Second, Solyarik contends that Copart falsely

---

[11] The undersigned also notes that *Bill Spreen Toyota* is a case arising under Georgia law, not Alabama law.

provided the VIN through its vehicle listing and corresponding pictures, and upon delivery, removed the false VIN.  (Doc. 61 ¶ 42).  In both instances, Solyarik must establish that it was reasonable for him to rely on Copart's false representation to succeed on the merits of his claims. *See Waddell*, 875 So. 2d at 1160.

Solyarik's fraudulent misrepresentation claims against Copart fail for the same reasons as his fraudulent suppression claims against Allstate.  Even assuming Copart intentionally misstated the status of the title and the Challenger's VIN, as discussed above, Copart explicitly informs members that the VIN and title information provided are "for convenience only" and should not be relied on.  (Doc. 64-1 at 6).  Solyarik admits that he relied on both the title and VIN information listed through Copart's platform despite these explicit terms.  (Doc. 61 ¶¶ 38, 43).  Therefore, Solyarik cannot establish his reasonable reliance on Copart's misrepresentations.

### C. Wantonness Claims (Copart & Allstate)

Under Alabama law, wantonness is "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others."  ALA. CODE §6-11-20(b)(3).  "'Wantonness' has been defined by [the Alabama Supreme] Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result . . . . The knowledge of the defendant is the sine qua non of wantonness."  *Mazda Motor Corp. v. Hurst*, 261 So. 3d 167, 189 (Ala. 2017) (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So. 3d 769, 773 (Ala. 2012)). "While a party claiming wantonness does not have to prove an intent to injure, [the Alabama Supreme Court] has held that wantonness requires proof of some degree of conscious culpability." *Ferguson v. Baptist Health Systems, Inc.*, 910 So. 2d 85, 92 (Ala. 2005) (quoting *Cessna Aircraft Co. v. Trzcinski*, 682 So. 2d 17, 19–20 (Ala. 1996)).  "'Conscious' means perceiving,

apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (quoting *Webster's New Collegiate Dictionary* 239 (1981)).

Solyarik contends that Allstate and Copart acted wantonly because they "knew the Alabama Department of Revenue Motor Vehicles Division did not communicate to them a salvage title for the vehicle had been created or sent" and yet Copart and Allstate intentionally sold the car to him without a title and failed to deliver a title to Bid N' Drive. (Doc. 61 at § 46). Even assuming Solyarik could establish that Copart and Allstate each owed a duty to him under the circumstances of this case and breached that duty by misrepresenting the status of the title,[12] he fails to show this would constitute "a reckless or conscious disregard" for his rights given the express warning not to rely on title information provided in the Challenger's description. Accordingly, Solyarik's wantonness claim fails as well.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss (doc. 64) is **GRANTED**. Solyarik's claims are therefore **DISMISSED WITH PREJUDICE**. The remaining claims in this action are Copart's third party claims against Bid N' Drive, which proceed.

DONE this 24th day of September, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[12] The parties quibble over what it means for a title to be "pending." (*See* doc. 64 at 9 n.2; doc. 68 8–9; doc. 73 at 10 n.7). It is unnecessary to definitively resolve that dispute.

16